hGREMILLION, Judge.
The plaintiff, Maudry Castille, appeals the judgment in favor of the defendants, Sam Cataldie and St. Paul Fire & Marine Insurance Company.[1] The jury found Ca-taldie was neither strictly liable to Castille nor negligent for injuries she suffered while employed as a caretaker for Catal-die. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Castille filed suit in April 1992, against numerous defendants for burns she sustained in April 1991, while employed at the home of Cataldie. Castille had begun heating cooking oil in order to fry sweet potatoes for Cataldie, who was bedridden, when she suddenly had to attend to him because he was in distress. By the time Castille returned to the stove, the grease had begun to burn. Castille turned the burner off, moved the pot to another burner, and placed a glass cutting board on top of the burning pot in order to put out the fire. She again left the pot in order to assist Cataldie, but returned shortly because she heard an explosion in the kitchen. Upon returning, she saw the pot was flaming again, this time reaching into the stovetop hood. Castille decided to leave the pot in order to assist Cataldie out of the home, but was unsuccessful due to a locked front door. At this point, Castille returned to the kitchen and picked up the pot with the intention of throwing it out in the yard. As she reached for the pot and headed toward the door, she claims that burning debris fell on her arm and she slipped, causing the burning grease to also spill on her arm.
In her original petition, Castille urged that she was “injured and severely burned when a clear hot plate manufactured by defendant, Glass Innovations, Inc., ... exploded into hot shrapnel, when momentarily placed on burning grease, thereby | ¡.causing a fire which seriously burned petitioner.”[2] Thus, at this time, Castille urged that the maker of the hot plate, along with the seller (Wal-Mart), the purchaser (Cataldie), and his insurer (St.Paul) were liable to her for injuries sustained. Castille further urged that Cataldie’s negligence resulted because he allowed grease to accumulate in the ventilating system of the stove, a consequence of which was the fire that developed after the hot glass shrapnel struck the filter. It was not until October 2000, that Castille filed a second supplemental and amending petition urging Cataldie’s negligence as follows:
Alternatively, defendant was responsible for the injuries caused to the plaintiff pursuant to the doctrine of strict liability and CC Article 2317 in that the use of a flammable filter over the stove and in the vent thereof was unreasonably dangerous because it caught fire and caused petitioner’s injuries.
Trial was held in November 2000, and the jury returned a verdict finding that the *976 Castille did not prove by a preponderance of the evidence either the strict liability claim or the negligence claim, and judgment was entered in favor of Cataldie. Castille, thereafter, filed a motion for judgment notwithstanding the verdict and/or new trial, which was denied by the trial court. This appeal followed.
Castille assigns as error:
1. The jury’s verdict is contrary to the law and evidence presented despite the trial court’s instructions.
2. The trial court erred by not allowing videotape evidence created by fire department personnel and in not allowing fireman Bernard Wesley to testify at trial.
3. The jury and/or trial court (on JNOV) erred in failing to award $100,000 in general and special damages to her.
STRICT LIABILITY AND NEGLIGENCE
In her brief, Castille claims she was burned by the burning filter which | ^caused her to spill the oil, which further caused burns to her right arm. Castille then argues that beginning from the jury venire, the jury had “serious problems” understanding the doctrine of strict liability. However, the record reflects that the prospective jurors were explained the doctrine of strict liability and were asked numerous times whether they had a problem either understanding it or had any moral qualms with placing liability on a homeowner simply because an unreasonably dangerous item was in his possession. The jury never once indicated any confusion or disagreement with the doctrine. Additionally, the trial court thoroughly explained the doctrine at the conclusion of trial.[3] Castille finally states there are no issues of fact, only errors of law. We disagree.
A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record re *977 viewed in its entirety, the court of appeal may not |4reverse even though convinced that had it been sitting as the trier of fact, it would have weighted the evidence differently.
Id. at 844.
Though an appellate court may feel its own evaluations' and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. “Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Stobart v. State, Through DOTD, 617 So.2d 880, 883 (La.1993). “The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Id.
La.Civ.Code art. 2317 states in pertinent part: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.”[4] In relation to her strict liability claim, Castille had to prove 1) the defendant had custody of a thing, 2) which possessed a vice or defect, 3) that created an unreasonable risk of harm, 4) which injured the plaintiff. See White v. Louviere, 95-610 (La.App. 3 Cir. 11/2/95), 664 So.2d 603. An object presents an unreasonable risk of harm when the likelihood that the harm might occur and the seriousness of such harm outweighs the utility of the thing under the circumstances. Id.
In a negligence case, the plaintiff must prove that the defendant had knowledge of an unreasonably dangerous situation existing in his home and that his conduct fell below that of what one would expect from a reasonably prudent person. Id. Thus, we ask whether Cataldie should have reasonably foreseen that this would | .¡happen and whether he failed to exercise reasonable care to avoid it.
The jury verdict form was returned as follows:
INTERROGATORY NUMBER ONE: DO YOU FIND THAT THE FILTER WAS DEFECTIVE BECAUSE IT CREATED AN UNREASONABLE RISK OF HARM?
_YES X NO
If you answered “Yes[,]” please answer Interrogatory No.2.
If you answered “No[J” please go to Interrogatory No.4.
INTERROGATORY NUMBER
[FOUR]: DO YOU FIND THAT THE DEFENDANT’S CONDUCT WAS NEGLIGENT?
_YES X NO
If you answered “Yes[J” please answer interrogatory No.5.
If you answered “No[J” please sign and date this form and return to the courtroom.
Thus, the jury never reached the issue of causation, i.e., whether the filter or Catal-die’s sub-standard conduct, was the cause-in-fact of her injuries.
The following evidence relevant to Ca-taldie’s liability was adduced at trial:
Catherine Giordano, Cataldie’s daughter, testified that she has known Castille for about twenty years and that they are neighbors and friends. She stated that Castille called her home and told her about the fire. Giordano testified that when she *978 and her son arrived, Castille told her that, “I burned myself, a pot caught on fire and I tried to put it out and I burned by arm and I burned by fingers whenever I grabbed something off my arm and threw it on the floor.” She stated that, as she was cleaning up the mess in the kitchen, she picked up a “blob” off of the floor that was prickly and had splinters in it. She stated that, though she did not know what it was, she realized it was the filter from the stove hood after she looked and saw that it was empty. She stated that the first thing Castille told her about was the filter falling on her arm. She also testified that Castille admitted that she had splashed grease on her |fiarm and hand. She further stated that Castille continued to sit with her father even after the accident.
Joey Giordano, Catherine’s son, who accompanied her to the home and took Cas-tille to the hospital, testified that Castille’s arm had a “black burn to it ... almost like, as if like a plastic burn.”
Theresa Cataldie, the homeowner, stated that, upon moving into her residence, there was no filter in her stove hood and she could never find the exact size that fit into it. So, while purchasing an air conditioner filter, she saw these particular filters that said they could be cut to fit to size. She stated she did not know that the filter might be flammable and that nothing on the package indicated that it was flammable. Theresa further stated that she would not have purchased the mesh filter if she did not think it was appropriate to put in her stove ventilation system. She stated that her maid, Mary Dunbar, would cut the filter to size and change it every month or so to prevent it from becoming greasy. She also testified that she had been using these filters for more than five years without incident and that she cooked quite often using the stove top. She further stated that the pot’s lid was approximately two feet away in a cabinet and that baking soda was right above the stove hood in a cabinet.
Nicole Brown, a friend of Castille, testified that Castille told her that something fell on her arm and burned it, and that she took the burning pot outside.
Castille testified that she placed the pot on the stove and filled it with cooking oil and set the temperature between medium and high. She stated that Cataldie began to cough, so she left the kitchen to assist him which involved turning him on his left side to prevent him from choking. She stated that, while she was trying to turn him, she saw fire coming from the kitchen so she ran to the stove, turned off the burner, put the hot pot on a different burner, and placed the cutting 17board on top of the pot to smother the fire. She testified that she left the kitchen again to finish assisting Cataldie, believing that the fire was out. The next thing Castille heard was a loud explosion coming from the kitchen and she saw that the fire was now extending from the pot to the stove hood. She stated that her first priority was to evacuate Cataldie, so she attempted to take him out through the front door, but realized that the door was locked and she had no idea where the key was. Next, she stated she was panicked and ran back into the kitchen and then back again to cover Cataldie with a sheet, to prevent him from coughing from the smoke. She stated that, upon returning to the kitchen, she was scared that the curtains were going to catch on fire so she picked up the pot and ran and threw it outside.
Castille testified that, when she picked up the pot, she slipped on some of the cutting board shards and spilled the grease and was also trying to knock the filter off of her hand. However, she stated that the largest burn was caused from the *979 grease that spilled down her arm while she carried the pot out of the house. She further stated that grease spattered on the floor and carpet and that the hot grease had melted the carpet, which was later replaced. Castille admitted that, in her previous deposition taken in August 1992, she never mentioned a filter falling on her arm and attributed all of her injuries to the burning grease, specifically stating four separate times that burning grease fell on her arm and hand.
Dunbar stated that she changed the filter in the stove hood every month and that the filter was not greasy as Ms. Cataldie rarely used the vent. She said that, on the day of the accident, she took out the pot for Castille to fry the sweet potatoes. She testified that she also took out a lid, but that Castille said she did not need the lid so Dunbar placed it back in the cabinet with at least fifteen more pot lids, within arm’s reach from the stove. Dunbar also stated that baking soda and salt were in the cabinet next to the stove hood.
|sThe emergency room report from England Air Force base hospital states that Castille “had [a] grease fire burning her right arm and hand.”
Dr. John S. McCabe, plastic and reconstructive surgeon, first saw Castille in July 1991. He stated that she suffered a burn on her hand in April 1991, and that she stated that it was a grease burn.
Based on the evidence presented, we find no manifest error in the jury’s determination that the filter did not present an unreasonable risk of harm because it caught fire. The evidence presented suggested that the filter system used by the Cataldie household had been successfully used without incident for a number of years. Moreover, we believe that the utility of having a ventilation system in a stove-top hood outweighs the rare chance that a glass cutting board will be placed over a burning pot of oil causing it to explode and ignite the filter material. As Cataldie’s counsel points out, many things in a kitchen are flammable, but, it does not necessarily follow that they are unreasonably dangerous. Additionally, many items may catch fire when a flame is placed directly underneath it. Castille presented no other evidence proving that the filter was unreasonably dangerous, other than the fact that it caught fire in these particular circumstances. Therefore, we hold that the jury reasonably found that Catal-die was not strictly liable to Castille.
Additionally, we find no error in the jury’s finding that Cataldie was not negligent. It is undisputed that he was unaware that the filter was flammable, and we agree that he could not have reasonably foreseen the events that would follow. We do not believe that the Cataldies’ purchase of a filter that specified it could be cut to size, but apparently no where indicated that it could not or should not be used in a stove-top hood, fell below that of a reasonably prudent person. Thus, we find no error in the jury’s determination that Cataldie should not have reasonably foreseen that this would happen and failed to exercise reasonable care to avoid it.
I c,VIDEO AND TESTIMONIAL EVIDENCE
Castille urges that the trial court abused its discretion because it did not permit videotape evidence created by the fire department into evidence and did not permit Wesley Bernard, fire prevention officer, to testify. The videotape showed an allegedly identical filter being set aflame, central to her argument that the filter’s flammability is what makes it unreasonably dangerous.
The introduction of videotape evidence is within the discretion of the *980 trial court and, absent and abuse of discretion, we will not overrule the trial court’s rulings regarding the admissibility of evidence. Lee v. Automotive Cas. Ins. Co., 96-517 (La.App. 3 Cir. 11/6/96), 682 So.2d 995, writ denied, 96-2949 (La.1/31/97), 687 So.2d 409. We find no abuse of discretion in the trial court’s exclusion of this evidence. It found that the videotape was prejudicial because it in no way recreated the accident scene, but instead showed fire department personnel setting a flame only a few inches underneath the filter. We viewed the videotape and agree that the demonstration of the burning filter created by entirely different circumstances had absolutely no probative value whatsoever.[5] Moreover, as pointed out by St. Paul, this evidence is cumulative. It is undisputed that the filter caught on fire; an image which can easily be envisioned by the jury without a demonstration via videotape. Further, there was no dispute that the filter was not flammable. For the same reasons, Wesley’s redundant and duplica-tive testimony that the filter was flammable was also properly excluded.
We find that the exclusion of cumulative evidence that the filter was flammable was not prejudicial to Castille’s case and did not substantially affect the outcome of the case. Therefore, we find this assignment of error without merit.
ImDAMAGES
Because we did not find Cataldie liable for Castille’s injuries, we need not address this assignment of error.
CONCLUSION
For the foregoing reasons, the judgment in favor of the defendants, Sam Cataldie and St. Paul Fire & Marine Insurance Company, is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Maudry Castille.
AFFIRMED.

. Cataldie was deceased at the time of trial; however, we continue to refer to him as the defendant as his succession was not substituted in his place.

. The "clear hot plate” is actually a glass cutting board. Glass Innovations was dismissed from the suit in August 1993, and is not a party to this appeal.

. The trial court stated:
Plaintiff claims that the defendant is liable under the legal theory of strict liability. Strict liability is explained as follows. In this case, the activity in question is the custody of a thing. Namely the stove hood filter which plaintiff claims presented an unreasonable risk or harm. The Civil Code in Article 2317 provides a standard applicable to this activity. It reads: “We are responsible not only for the damage occasioned by our own act but for that which is caused by the act or persons for whom we are answerable or of the things which we have in our custody.” In interpreting this standard, our courts have determined that when harm from a defect in a thing which creates an unreasonable risk of harm to others, the person legally responsible for the custody of that thing may be held liable for the damage caused despite the fact that no personal negligent act or inattention on the person's part is proved. This liability arises from his legal relationship to the thing that creates an unreasonable risk of harm to others.
The plaintiff must prove in this case that the thing in question was defective, that is, that it posed an unreasonable risk of harm, it was in the custody of the defendant and the plaintiff was damaged as a result of this defect.
If Ms. Castille proves these three things by a reasonable preponderance of the evidence, the defendant who is in custody of the thing in question can escape liability only if they show the harm was caused by the fault of the victim, a third person or by an irresistible force as hereinafter explained.

. The law regarding strict liability applicable to this case was enacted before the 1996 tort reforms, thus, La.Civ.Code art. 2317.1 is inapplicable to our present discussion.

. The videotape depicted two different situations. In the first, a rectangle of the filter material was placed approximately two inches above a miniature bonfire. In the second, a lighter was used to directly set the filter material on fire.